Good morning all. This is Frank Todry II, Senior Deputy Attorney General for the state of Nevada. I'm representing the appellants for the Nevada Department of Corrections today and the state of Nevada. We're here specifically on whether the district court correctly or incorrectly denied qualified immunity on Richard's sole remaining 1983 claim of excessive force. Because the inquiry is purely legal, the standard of review is de novo. Stare decisis holds special force and excessive force claims, whether it be under the 4th or 8th Amendment. And as recently as last June, the Supreme Court has decided not to revisit the stance. We would respectfully ask that this court find that the state was entitled to qualified immunity on these 8th Amendment claims pertaining to use of force in April of 2015 in the Ely State Prison Maximum Security Institution, which is the central issue in this claim. And so you're representing Mr. Boardman, Mr. Cox, and then also Mr. Baker? Yes, we have three remaining defendants in here. Officer is Boardman, the warden is Baker, and the former director is Gregory Cox. All right, so let me ask you on the standards that need to be applied here because I'm trying to figure out which standards apply both for Boardman and then also the supervisors here, the director and the warden. And I just wanted to give you an opportunity to talk about what you think, whether the deliberate indifference standard or the malicious and sadistic standard applies to Director Cox and warden's policy in this case, which from what I can tell the policy that you are asserting here is implementing birdshot policies in combination with the get-down-on-reserve. That seems to be what the policy is here. We take what Mr. Richards is alleging here. Yes, Your Honor. Essentially, the base inquiry was deliberate indifference for the fact there still should have been a qualified immunity analysis. It's slightly different for the officer and the administrators. For the administrators, it's going to be whether they're on clear notice that this get-down-skip-shot policy was a clear violation of law. Do they have to show for the policymakers malicious and sadistic or do they have to show deliberate indifference? I would suggest that the sadistic actually comports a bit more with the correctional officer because the determination is whether they used the force with sadistic and malicious intent. Okay. And as to the policy makers, I just want to get an answer to Judge Murkia's question on the policy makers. Is it your position that as for the policy makers, the question is whether they were deliberately indifferent when they adopted this safety measure? Yes, Your Honor. And the query is that even if the act was found to be indifferent, whether they were still under clear notice that this policy was constitutionally derelict. Sure. I understand that. She was just asking a limited question. I'm trying to get an answer. So thank you. Yes. So that was our point is that the district court erred in failing to undertake an individualized and particularized immunity analysis. It simply found that there is a question of fact as to whether there was a blank round fired or not and then left it at that. And this isn't the type of question in fact that is so vast that the district court could not still undertake a qualified immunity analysis even assuming. Well, what is it you think we ought to do? Setting aside what the district court did here for a minute. How do we analyze this? This is not the first birdshot case coming out of this particular policy. We've had several, right? Correct. And this one is probably our last one. I hope so. That would be great. But the problem you've got is that there's a national survey and it's not included in your brief, which tracked Judge Ikuda's dissent in places verbatim, but it omitted mention of the nationwide survey that you're aware of. Nevada was a part of those cases and knew about that. And that survey, which is referenced in the complaint, not by name, but it references that there had been 71 instances of prisoners being shot and sometimes employees being unintentionally shot and injured, as you know, before this incident in 2015. 2012, 2013, and 2014, 71 people had been shot, right? So my question is, why shouldn't we find that these defendants were on notice? Well, the primary report relied upon in Richard's brief was released three months afterwards. And while the warden and any administrator was certainly aware that there was an investigation going on, there was not a written decision or memorandum advising of the deficiency. Okay. So I think that might be right. So let me give you that for just for the moment. And we set that aside. I think there are actually drafts of this report, but let's just take that for a minute. As to one of your defendants who adopted this policy in 2012, right? And the policy existed through 2016. That individual was director of the Department of Corrections in the state of Nevada. Is it your position that individual was not aware of the 71 injuries? It's not my position that he was unaware of the injuries. It's my position that there's not a clear legal notice that this use of force policy was deficient. The case law that actually found this policy to be the moving force behind the shootings did not come into existence until 2018. And perhaps one could stretch it to 2017. I'm sorry, I'm missing this point. I think you've frozen my end for just one second. I don't want to miss your argument. Could you pack up about 30 seconds? Oh, yes, Your Honor. I'm suggesting that it's a slightly different standard as to legal notice as to when this policy was found to be unconstitutional. In 2014, while he might have been aware of shootings, he's not on the promulgated. It is not on any kind of notice that his policy is constitutionally violative. It wasn't until perhaps Perez or Arabello that it was actually found to be clear legal notice. And I would I would suggest that under qualified immunity that that is the line of demarcation we're looking at here. Excuse me, where do you what's your best authority for the prior established precedent is required? The United States Supreme Court has said that that's not the case, right? Well, I would I would suggest that it's under. It's under you're familiar with the hitching post case, that's the sort of a colloquial term that we use there. There are it is rare, but there are certainly examples where the Supreme Court has said it's across the line and any reasonable officer would have known. I am paraphrasing to be sure. But can you I just want to get your best response, please. And well, that's where I mean, one can differentiate clear notice or whether something is so deficient that it's a lack of better term shocks the conscience. And I would suggest that while they are familiar with the shootings, this isn't a case to necessarily shock the conscience yet. And especially in looking at Ely State Prison, because as the maximum security institution, even seeing the shootings, this one actually had the least per capita of all the Nevada institutions. And I would set forth that because there was not clear legal notice that the AR was unconstitutional, that this use of force provision was constitutionally derelict, that we're not under the correct. We're not under the legal notice that would escape qualified immunity. Could you could I ask a follow up question about Officer Boardman, please. There's a dispute about whether the blank shot was fired first or right or not. So I think for my understanding is that it's not contested that for purposes of this summary judgment, we have to assume that a blank shot was not fired. That is that the policy was not adhered to strictly. So could you run through the analysis? You've explained that for him, you think it would require the higher standard malicious and sadistic is I think I understood what you said earlier. Is that right? Yes, Your Honor. OK, so what do we do about that? The blank shot? What's your analysis of that, please? In this case, the district court order found that there was a question of fact as to whether he fired the blank shot and then determined that because he did not comply fully with the AR, that he was therefore not not entitled to qualify immunity. But I would I would set forth that even assuming he did not fire a blank shot, it's clear that he was attempting to follow the administrative regulation as set forth. This is why it differentiates significantly from Robbins v. Meacham, from Aravello v. Perez. Those all had very definitive findings that the officer acted with sadistic intent. But we don't have any kind of findings here. I mean, what I find a little a little problematic, unfortunately, regrettably, it looks like the district court applied a deliberate indifference standard to Boardman. And so because he did that, the district court didn't apply the malicious and sadistic standard and therefore didn't go or allow you all to argue the five factors and whether or not, you know, the malicious there's a you know, I guess whether even under the malicious and sadistic standard, he could, you know, Richards could go ahead and proceed or, you know, if there was qualified immunity, he did. And then on the on the whether or not the law was clearly established, the district court just stopped in this analysis and didn't take all the facts that the plaintiff had asserted is true. And then it wasn't until the motion for reconsideration that he he pointed to Robbins. But what do we do about the fact that that you all didn't get to argue or the district court didn't really analyze Boardman under the correct standard, it looks like. So what's your position on what should happen as a result of that? Yes, your honor. And that's why some of these are some of these arguments have gone into the hypothetical. And for lack of a better term, the district order. How do I say stop short? It found a question of fact. And then I would suggest that at that point he was that the district court was required to undertake the five factor test, the qualified immunity test. So I would I would suggest that alternatively, if this court weren't inclined to go so far as to find any reversible error, that at the very least we could remand this matter for supplemental briefing as to the as to the clear notice and the qualified immunity arguments that the underlying decision did not make. Counsel, is it possible? Would it be? This is a this is not a trick or leading question. I'm truly interested in whether it's your position. If you think the standard is malicious and sadistic and Mr. Borden, Officer Borden was abiding by a policy, is it not possible that we would rule as a matter of law that the standard is not met here? On the alleged facts, assuming the facts are, as plaintiffs indicates them, is that is that beyond the can here? I believe we can. We don't have to necessarily irreconcilable issues here. We can find that he was indifferent without finding that he was not. We can find he was indifferent and still find that he's entitled to qualified immunity. This was my question is a little different. My question is, could we find that the allegations in plaintiff's complaint are, you know, assume that they're all true and and then asked Officer Bordman decide that they do not arise to the level of malicious and sadistic without requiring remand? That is a question. It's not a just like you would like your feedback. Is that not possible? I would suggest, yes, it is possible because I think there is a slightly different analysis as to Bordman and and the administrative officers. Well, there is, but I'm but I'm again, I really am trying to be a problem solver here. I'm looking at this complaint and it is it's a pretty succinct complaint. There's not a lot of going back to Judge McGee's point. There's not a lot of texture here to figure out what exactly. And there's certainly and we certainly don't have findings, right? Do you think on these allegations that given the complaint here, we would be in a position to say this as a matter of law doesn't rise to the level of malicious and sadistic? Is that your position? Yes. Yes, exactly, Your Honor. And I think that's the biggest differentiation between the cases that District Court used. Arabella, Perez, Robbins, all deplorable acts, all easy findings for an intentional and sadistic event. None of that, none of that's here. Well, it does indicate that according to the complaint, it does indicate that no warning shot was fired. And certainly it's undisputed that the individual who was hurt in this case was not involved in the altercation and of course suffered these really horrendous injuries. So I guess we'll consider that, but I appreciate your response. I guess I have a similar concern, but it arises from the procedural posture of the case. The District Court has declared that it cannot grant summary judgment because there are contested issues of material fact. And I too would like to figure out what we can legitimately resolve at the appellate level without having two appeals instead of one before this case ever gets to trial if it goes that far. So if we were to do what Judge Kristen suggested, I guess it would be a very hypothetical ruling that if Correctional Officer Boardman's version of the facts can be established at trial, then he is entitled to qualified immunity because as a matter of law, those facts would not amount to malicious and sadistic employment of force. Is that right? That's not my question. That may be a counsel's question, but that wasn't mine. Mine was just the opposite. Assuming the facts in the complaint are taken as true, could we rule they aren't sufficient to rise to the level of malicious and sadistic? Yes, I feel like so, and that would to some extent be a bit more judicially efficient than kind of the alternative relief that I had requested of supplemental briefing. So I think that I actually think Judge Kristen and I are getting to the same place, but from two different roadways. And I believe both of your honors are bringing me to the same place, which I had actually candidly not considered as a... Well, the problem you've got with both of our attempts to achieve judicial efficiency is really the one that Judge Mergia is pointing out. You know, it's just a very bare bones complaint. It's really tough to do that. I mean, there are some cases where we can, but this one is going to be tough. So that's why I wanted to give you a chance. It might be best to hear from Mr. Burton now. You have a minute and 47 seconds. I can give you a few more minutes, Mr. Trotter, but unless Judge Kristen or Judge Tallman have more questions at this point, it might be good to hear from Mr. Burton now. So Mr. Burton, can you state your appearance, please? Yes, thank you, Your Honor. Your Honors. Good afternoon. John Burton for the plaintiff. In my prearranged remarks, I had planned on addressing the potential liability of the supervisors first, but given the way the argument just went, I will flip that around and address Corrections Officer Boardman, who fired what we contend were two rounds of birdshot directly at Mr. Richards, who was uninvolved in the altercation and was doing what he was supposed to be doing, which was lying on the floor. According to the evidence of the defense... May I interrupt? Forgive me. I'm so sorry. Judge McGee, I think we have a problem with the clock. Oh, yeah, we do. I'm sorry. Scarlett, Mrs. Spinoza? Yes, thank you. I think the clock is on. I'm sorry. What's that? Hello. Sorry. Yes, I think the clock is now back on. Okay, go ahead. Sorry about that. Thank you, Judge Preston. Thank you. Reminds me of the NBA. We believe that the, or we're arguing that there should not be an appeal from the denial of qualified immunity to Officer Boardman because we don't know what the facts are and there's no jurisdiction for this court to decide what the facts are. They're two starkly different versions of events. Mr. Burton, and I'm sorry to interrupt you, but the only issue I see with that is that it looks like the district court applied the wrong standard to Mr. Boardman. He did a deliberate indifference standard to Mr. Boardman and from everything that I can see in on our law when it comes to the correctional officers who are actually enforcing this alleged excessive force, it seems like it should be a malicious and sadistic standard, and that's why I wanted to ask you that. What do we do about that? I disagree with your honor that, and we laid this out in our brief, I think very carefully, and as we argued on summary judgment, this is not a complaint. This is a summary judgment with depositions, an extensive factual record that we have two theories against Officer Boardman. The first is an excessive force theory because there's an interpretation of the evidence that he was aiming at these uninvolved inmates who happen to be African American, but that made them very sort of separate visually from the combatants. The people involved in the fight were not hit with birdshot, and he unloaded two rounds at eye level and hit only these uninvolved black inmates, including directly Stacey Richards with two different blasts. But counsel, the reason we're talking about the complaint is not that we're misunderstanding the procedural posture. It's that on page seven, paragraph 29, your complaint alleges that Mr. Boardman was acted maliciously and sadistically. I mean, I think you've conceded this point of the standard here. Well, I think we also argued on appeal and also in the district court as, you know, the case developed and we got facts that his spraying 600 BB pellets in this crowded tier with a bunch of people lying on the floor was deliberately indifferent to the safety of those bystanders and violated Farmer v. Brennan. We absolutely argued that, and we argued that on appeal. You disagree with Judge Gervias? Eight different Eighth Amendment claims here. But two different Eighth Amendment claims judged by two different analytical standards? That can't be the law. But it seems like the law, though, Mr. Burton, is when you have those two kind of claims, at least that's from my reading of Whitley v. Albers and I think it's Hudson. When you have those two types of claims against someone like the correctional officer, they collapse into the malicious and sadistic standard from what I'm reading. But I wanted to give you an opportunity to tell me if I'm wrong, but the cases that I look at, and I know why there was a lot of confusion here, because I think you do have two different theories, I guess, against Mr. Boardman as well. I mean, especially because he's actually the enforcer or the person who acted with the alleged excessive force. And then you're also saying it was maybe a safety issue on his part. But it looks like the case law says that when you have the officer who is actually enforcing it, looks like you apply the malicious and sadistic standard. But you're telling me, and I guess I just want to see what case that is, that says we use a deliberate indifference standard and not the malicious and sadistic standard. Which is your best authority for that? Well, if I could back up. I mean, we're talking about the Eighth Amendment. And the Eighth Amendment guarantees inmates reasonably safe environment. And that means freedom from a wanton and sadistic infliction of force by correctional officers. But it also protects them against other risks and dangers that come with the jail environment. Now, in Robbins v. Meacham, which is really on all fours, and I think disposes of this qualified immunity appeal, even without resort to the hitching post of Hope v. Because it's a case on all fours. They use the concept there of transferred intent. Because the plaintiff in that case was a bystander who was hit by a ricocheting pellet that was fired at a different inmate. That's one way to look at this case. I just think. But in Robbins, did they use a deliberate indifference standard against the officer? No. I think Robbins was used to show that there was. I mean, Robbins has been used to show that there was clearly established law. You know, I think is what the main argument that it was presented, at least here in this case. I'm sorry if I wasn't clear. In Robbins, it was an excessive force and then transferred intent. That's the way that was articulated. But it was judged by under the standard of malicious and sadistic employment. Of course. So I don't think it supports your argument that there are two different standards. That apply to the correctional officer. When you are alleging excessive force under the 8th Amendment. It's one standard. Malicious and sadistic employment of force. Well, I think that that it's one 8th Amendment standard. And that that standard can be violated by this. Officer unnecessarily spraying 600 BBs around a crowded chair. The floor of a crowded chair that has my client lying on the floor in compliance. Where he's hit squarely in the face with a shotgun blast. That that can be viewed either way. As a deliberate indifference to his health and safety. Or as a malicious and sadistic infliction of force. I don't think so. I don't think that's what Robbins says at all. I'm looking at at page. Let's see 60 F third at 1440 1441. We advance this purpose of the 8th Amendment by holding prison officials liable. So long as they have a specific intent to harm. Whom the prison officials shot. Robbins or Echeverria is not relevant. What is relevant is that they fired a shotgun blast at an inmate. It is this conduct that the 8th Amendment is designed to restrain. And then later in the opinion. We hold that it is judged under the standard of maliciousness and sadisticness. So I just don't see how that case supports your argument. That it also could be deliberately indifferent. I don't see how it changes the outcome here. Which is that the district court should be affirmed. And that this issue. Then this case then will is an interlocutory appeal. The case will then go forward to trial. Which is what a district court should be. Affirmed when it applied the wrong standard. What case do you have that supports that proposition? That would be a first in my 20 years on a. What the district court said is that. There is a dispute of fact here. And under either version of the facts. And under either standard frankly. There's a dispute of fact that precludes adjudication under Rule 56. Well that. But sir. Assuming we don't. Sorry. That may be. But that really wasn't borne out in the district court below. What happened is the district court. Ended up using the deliberate indifference standard. And I do think there are some questions here. And that it probably needs to be fleshed out. Under the malicious and sadistic standard. Because it looks like you're offering a theory. That maybe he did this intentionally. And that he because of their race or for other reasons. And I think it's appropriate to have that. Those arguments presented. And have the district court then evaluate that. Because there's five factors under that malicious and sadistic standard. That the district court would need to then decide. I mean you know the question is. I mean should we be doing that? I'm not sure we're in the best position to do that. But I that's why I wanted to ask. But I do think there is an unfortunately for you. An issue here. Regarding a problem here. In that the district court you know. Reviewed this under the standard. That's that's not the one that applies. Well I think the problem here. Is trying to sort out these kind of issues. That arise from complex. Challenged disputed factual situations. On interlocutory appeals. If the this court affirms. The consequence will be. We'll go back to the district court. There will be presumably a jury trial. All of this can be aired. We can have all the evidence. A jury can draw the inferences as appropriate. The court can rule. And then if somebody is not happy. With the way it came out. We can come up with a complete record. In the different standard of review. Without ever telling the district court. On remand you misapplied the legal standard. Here's the legal standard you must. Attach and you must so instruct the jury. I think the only way you could possibly. I don't agree that the district court. Applied the wrong standard. So if you lose on that. And we disagree with you. And we decide that he applied the wrong standard. If you could just go with a hypothetical. Because that would be helpful to me. Then I think the only hope you've got. Because there are disputed facts. That we would have to say. That that that standard doesn't matter. On these facts on the undisputed facts. And I don't know how we do that. Given the allegations. That you made in your complaint. You know I I sure would like to argue. The supervisory liability here. And all my time has been spent on. Well don't worry don't worry. Mr Burton appeal turns. Yeah no that's fine. I just I think we've. We needed to figure out. What was going on with the boardman. I agree with you. It's very important with the supervisors. And so don't worry about the time. Mr Burton. I assure you I'll let you. Make all the arguments that you need. This is really important. And I understand this. That very much. It's very important to your client. So so let's if we can pivot. You know for a moment here to. Director Cox and Warden Baker. And I I guess. You know the whole question here. I do think that the district court. Used the appropriate standard here. And I think the the the. The attorney general here. You know has agreed. That that was the appropriate standard. Deliberate indifference. To the supervisors. And so the question for me. Is more on. Whether or not they were. The law was clearly established. For the supervisors. So can you. Talk to me it sounds like. You rely a lot on Robbins. That that was sufficient for. Director Cox and Warden Baker. To to to be on notice. That get down orders. Combined with the firing birdshot. At the ground violated. The eighth amendment. But I do have a little bit of pause. That there were no get down. Orders involved in that case. It was more of just the firing. Of a shotgun in general. If I recall. I mean I think it was. Birdshot but. No I think it was just. The firing of the shotgun. If I'm getting that case correct. So tell me why you think. That the the director. And the warden had. Sufficient notice here. And that the law was clearly established. Thank you setting aside. The fact that we actually have. A case on all fours which is Robbins. And I don't think that. The get down order. Distinguishes Robbins that just. Makes Robbins an easy. I mean makes this case. An easier case than Robbins. Because here they're the policies. They're telling the inmates. Who are compliant to get down. And put their their faces. In the way of the birdshot. But I think this is a. Hope versus Felser hitching post case. In that it was obvious. That telling people to get down. And then skip shooting birdshot. Is is creating a. Known risk of harm. And not. Taking a deliberate action. To to to to cure it. That's the law. Could I ask a little bit about that. Counsel just a little bit. My understanding of the policy. Is that the idea was to skip shot. Give the warning and then skip shot. With the idea with that. Prisoners who are involved in altercations. Might be struck in the legs. And not mortally wounded. In order to break up a fight. Or restore order. So I think what you're saying. Is that that you're taking. Issue with the fact that. In this particular iteration. The idea was. They may be skip shotting. Birdshot you know. Towards the lower extremities. Of the people who are on their feet. And fighting. But for everybody else. Perversely the guys who aren't fighting. Order to get down on the ground. And their faces are then in heads. Are in and maybe hearts. Are in harm's way. Well that's exactly our our contention. And and that's so obvious. That that a case on point. Is is it's not even required. And in that regard. So in other words. You did say that in your briefing. That a case on point is not required. And you argued what I'm calling. Colloquially that the hitching post case. But I but it seems to me. That it's a combination. It's not just that it's not. It's it's not just your case. Your argument. That using shotguns in prison. A place where surfaces are likely. To be cement or metal. And there's going to be ricochets. Is quote unquote so obvious. That it's excessive force. But in fact it's this combination. In your case of the the combination. Of the get down order. That puts people in harm's way. That actually exacerbates the problem. Rather than making it better. It's making it worse. Is that it? Exactly. I couldn't have said it better myself. Thank you. No I really I'm just trying to understand. Because this is not the first case. That we've had. And I and they're always. A little bit different. And so I don't think. I understood this part of your argument. Until now. You phrased it a little bit. Differently today. Well Perrette. And I think this also applies. To our argument against Gordon. This is what I was trying to say. But the Perez case. Which I know was was. Before your honor. That was a case. Where the the agreed. Well the the scene was targeted. By the the buckshot. He was involved in the fight. He was one of the guys fighting. Yeah right. In the other case. It's been raised. Ari Ballos was the other guy. Involved in that fight. Olivas. Which was an earlier shooting. And another Nevada prison. Where the inmate lost vision. In one eye. Was very similar to this case. Where there was a get down order. He got down. The rounds were fired. Supposedly at the combatants. And he lost sight. In one eye. That was a district court opinion. It's cited in the papers. It I don't believe. Went to the circuit. I think it was resolved after that. So there I think. There is a difference. When the person is targeted. Versus when he's not. And and we're focusing. Our supervisory liability. Argument on bystanders. Who are entitled. To a safe prison environment. And I just want to say about. Ely state prison. Are you conceding. That the policy would be okay. If there were no bystanders. No, I'm just saying. That's not this case. That's a Perez case. Well, I'm trying to look at it. I'm trying to look at it. From the standpoint. Of the promulgator of the policy. And it seems to me. Although I think it unwise. For the reasons articulated. By Judge Kristen. To be firing birdshot. In in a confined space. Of a maximum security prison. That if the policy. As written was intended. To prevent harm. Greater harm. To the assailants. By hitting them. In lower extremities. What we're really arguing. About here is the failure. To think about. Well, what would happen. If the shot was fired. When there were innocent. Bystander inmates. Who were fully complying. With the get down order. In the immediate vicinity. Where they might be. It directly in the face. Even though the. The shot was fired at the floor. That that's our argument. And and that's. We think as far as. As the court needs to go. To affirm the district court. But is that an argument. That goes to the promulgation. Of the initial policy. Or the way in which. This correctional officer. Employed it. Without giving due regard. To the fact that he had. Innocent inmates. In the background. That were likely to be hit. He was told. Don't worry about it. And we asked. Warden Cox. His deposition testimony. On this point. Is in the record. We asked. I'm sorry. Director Cox. Warden Baker. We asked her. And her testimony. On this is in the record. It's cited in our brief. They said. Well, we didn't consider. The safety of. Bystander inmates. Who we understand. Will be lying on the floor. Because that's what. They're supposed to do. When these skip shots are fired. And if I could. Turn to. But how I guess. I guess the question. Mr Burton is. How if that's true. How would that show. Deliberate indifference. To the constitutional rights. Of the inmates. In the promulgation of the policy. Because. And for. Let me just back up. A couple things. I'd like to say. Number one. While Ely State Prison. Is a maximum security prison. For the worst. Prisoners in the system. That's not this tier. This tier. Was trustees. These were worker inmates. So these were more comparable. To the kind of. But my my. My concern is. Judge Kristen's concern. I don't know what they're doing. In the first place. Firing shotguns inside. A concrete and steel. Pod at a. Tier of trustees. No, right. But I don't understand. Why you would have. Why you would even. Contemplate such a thing. But the question is. That's our challenge. Promulgated the policy. Did they know. That they were. Deliberately indifferent. To the constitutional rights. Of the inmates. That the policy. Was designed to come. Yes. And that's where. The ASCA report. That Judge Kristen. Mentioned. Comes in. That's admissible. Over hearsay objection. 80 federal rule of evidence. 803 subdivision 8. And that details. All the incidents. Where bystanders. Where other. Correctional. Employees. Have been hit. By these ricocheting. Butt shots. And was that. The logical inference. That the wardens. And the director. Knew these bystander. Injuries were happening. And yet they allowed this. They promulgated. And allowed this. Until their testimony. Their testimony as well. Also. I thought. Mr Burton. Their testimony. Reflected that they were. Aware of that. That was the practice. In in the facility. That the. When there was a shooting. They were. All of the bystanders. Supposed to get down. On the floor. And they were aware. That of what the AO. You know for. 405 policy. Was with. Along with the practice. That. Of these get down. Orders. And that they were. That the. Shooters. The the. The people who were shooting. The birdshot. Were to. Not regard at all. The people lying. On the floor. Am I. Correct in that. Or or not. Yes you're absolutely correct. That is the evidence. In this case. That the district court. Had when it denied. Summary judgment. On the qualified. Immunity claim. In favor of the supervisors. That's the evidence. Thank you very much. For allowing me. To go over my time. Unless the court. Has any other questions. I'll let me see. If anybody else. Has any questions. No it's helpful. Clarification thank you. Yeah thank you very much. Mr Todrick. Yes your honor. I'll just. Wrap it up. Very briefly. We know there's. Going to be a consistent. Tension. Between freedom from excessive. Force and a justified. Use of force. We're suggesting that. Defendants here did not get a. Fair and thorough analysis. As to these individual situations. In simplifying the argument. I think there's just. Two primary points. To each person. I mean to. To the different categories. Of defendants. Boardman. The correction officer himself. Made this split second decision. We would suggest. That the district court. Error in applying. The incorrect standard. And then fit. And the cases they apply. Do not coincide. With the incident case. Robbins Arabella Perez. All had clear and distinct. Findings of sadistic harm. That is not the case here. And for that reason. We can't pigeonhole. This matter. To be on all fours. As it were said. With the Robbins case. Or the Arabella Perez. As to the administrative. Employees. And the use of force. Policy at issue. They knew there. Yes they were. Deposition testimony. Said they were aware. That shootings had occurred. But there's nothing. In jurisprudence. Or reports. To suggest in April of 2015. These policies are unconstitutional. That they were out. Noticed that this was a. Out of date. Sort of policy. A.R.'s. Use of force. Regulations. Change all the time. With. Norms of society. And upon learning. That there may be better ways. To do things. These. While these. Skip get down skip shot. Might not necessarily been. In vogue. As it were. There's nothing in jurisprudence. To say this is unconstitutional. Every single. Every single report. Every single case relied upon. By the district court. Occurred after April 2015. And I'm suggesting. That under qualified immunity. We we essentially. Have a freeze frame. At that moment in time. April 2015. Are these administrators. Familiar and aware. That this is an unconstitutional policy. And can I ask one follow-up question. Please judge McGinn. We've had quite a number of cases. I'm I don't I think. Opposing counsel crystallized something. Today that I hadn't heard before. There's other cases. Involving policy 405. Regarding the firing. Skip shot at legs. Lower extremities of people. Who are fighting. But this case has the twist. Of the additional local policy. Telling everybody else to get down. And his argument is. That was a double whammy. Because it puts people's. Heads faces. Chests in the line of fire. Because policy. The first policy says. Be shooting at the floor. And the second policy says. Everybody who's not fighting. Get down. Is there any other case. That that. Addresses both. Policies. That is this this. This second policy. About getting down. When a minister. Implemented by. Defendant Baker. Not that I'm. Not that I'm aware. And I'm not aware. Of this being. Argued cited. On the district court. Briefs that would have put. Put either party on notice. As to whether this. Had been previously. Determined to be. An unconstitutional. Two-step process. As it were. Thank you. If. Do you have anything? I don't have time. So I would thank everybody. For their consideration. Thanks folks. Thank you both. Thank you both. Very much. I appreciate you. Helping us sort through. This challenging case. The case of. Stacey M. Edwards. Versus Greg. James Greg Cox. Is submitted. Thank you very much. That concludes our. Cases for today. So we will. Be adjourned. Thank you.
judges: Tallman, Murguia, Christen